1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10   JACIE LEE GOUDLOCK, JR.,        )  Civil No. 08cv204 BEN(RBB)
                                     )
11                Plaintiff,         )  **REPORT AND RECOMMENDATION**
                                     )  **GRANTING DEFENDANT PETERSEN'S**
12   v.                              )  **MOTION TO DISMISS PLAINTIFF'S**
                                     )  **FIRST AMENDED COMPLAINT [DOC.**
13   ROBERT HERNANDEZ, Warden;       )  **NO. 23]**
     SILVIA H. GARCIA, Associate     )
14   Warden; THOMPSON; Correctional  )
     Officer; CRUZ, Correctional     )
15   Sergeant; L. PETERSEN,          )
     Registered Nurse,               )
16                                   )
                  Defendants.        )
17   _____)

18        Plaintiff, a state prisoner proceeding pro se and in forma

19   pauperis, filed a civil rights complaint on February 1, 2008,

20   pursuant to 42 U.S.C. § 1983 [doc. no. 1].  His Amended Complaint

21   was filed on August 8, 2008 [doc. no. 7].[1]  Defendants Hernandez

22   and Garcia were not named in the Amended Complaint, so they were

23   dismissed from this action on December 2, 2008 [doc. no. 12].

24

25

26

27   _____

28        [1]  Because the pages in the Amended Complaint are not
     consecutively numbered, the Court will cite this document using the
     page numbers assigned by the Court's electronic case filing system.

                                    1                    08cv0204 BEN (RBB)

Goudlock asserts that Defendants Thompson, Cruz, an unknown correctional officer, and Nurse Petersen[2] violated his Eighth Amendment rights. (Am. Compl. 2-4, 8, 14.) On February 10, 2009, Defendant Petersen filed this Motion to Dismiss [doc. no. 23] and Memorandum of Points and Authorities in Support of the Motion [doc. no. 23-1]. The Motion was accompanied by Declarations from N. Grannis [doc. no. 23-2], and E. Franklin [doc. no. 23-3].

The Court found Defendant's Motion suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1) [doc. no. 24]. On March 20, 2009, the Court issued a <u>Klingele/Rand</u> Notice Warning Pro Se Prisoner of Unenumerated 12(B) Motion to Dismiss for Failure to Exhaust Administrative Remedies [doc. no. 25]. Plaintiff's Response to Defendant L. Petersen's Motion to Dismiss was filed on April 24, 2009 [doc. no. 28]. Petersen's Reply was filed five days later [doc. no. 29].

Nurse Petersen argues that Goudlock's claims against her should be dismissed pursuant to the unenumerated portions of Federal Rule of Civil Procedure 12(b) because Plaintiff failed to exhaust his administrative remedies before filing suit. (Def. Petersen's Mot. Dismiss Attach. #1 Mem. P. & A. 2.) Defendant also argues that Plaintiff has failed to state an Eighth Amendment claim against her, and she is entitled to Eleventh Amendment and qualified immunities. (<u>Id.</u>)

---

[2] Petersen explains that her name was misspelled as Peterson in the Amended Complaint. (Def. Petersen's Mot. Dismiss Attach. #1 Mem. P. & A. 1 n.1.) To avoid any confusion, the Court will identify Defendant as Petersen, not Peterson, throughout this Report and Recommendation.

# I. FACTUAL BACKGROUND

Plaintiff was a prisoner at R. J. Donovan Correctional Facility. (Am. Compl. 1.) On June 15, 2007, at approximately 4:00 a.m., Goudlock was injured when he fell off the top bunk while sleeping. (Am. Compl. 3.) He claims that he "cut [his] left foot to the point that the injury needed stitches, and was bleeding profusely, as well as twist[ed] [his] ankle, [and] shav[ed] skin off [his] right thigh, and caus[ed] further damage to an already damaged [s]ciatic nerve." (Id.)

Plaintiff's first cause of action is against unknown correctional officers who failed to respond quickly to his calls for help. (Id.)

Goudlock's second cause of action is against Defendant Petersen. (Id. at 4-7.) Plaintiff arrived at Facility One Medical Clinic at approximately 8:15 a.m., and Petersen, a registered nurse, made him wait for treatment. (Id. at 4.) Goudlock claims that he "was left sitting in the medical clinic from 8:15 a.m. to 1:15 p.m. (over five hours) without care, causing [him] to suffer needlessly." (Id.) He contends that an argument broke out between a correctional officer and Petersen; shortly thereafter, Dr. Lindsey Dugan came out and talked to Goudlock. (Id.) According to Plaintiff, Dr. Dugan ordered that Goudlock be taken to the triage area for stitches, but he was unable to receive stitches because too much time had elapsed since his injury. (Id.) Plaintiff claims that he "could not receive the best option of treatment due to L. Petersen, R.N. ignoring [his] need for medical care, therefore violating [his] rights, and causing [him] unreasonable suffering." (Id.) Plaintiff attached a copy of his "Health Care

1 Services Request Form" as evidence of his encounter with Petersen.

2 (Id. at 5-7.)

3     Goudlock's third and fourth causes of action are against

4 Correctional Officer Thompson and Correctional Sergeant Cruz for

5 forcing him to sleep on the top bunk.  (Id. at 8-17.)

6     **II. LEGAL STANDARDS APPLICABLE TO THE FAILURE TO EXHAUST**

7 **A.   Dismissing Unexhausted Claims Pursuant to the**

8     **Unenumerated Portions of Rule 12(b)**

9     Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act

10 ("PLRA") states:  "No action shall be brought with respect to

11 prison conditions under section 1983 of this title, or any other

12 Federal law, by a prisoner confined in any jail, prison, or other

13 correctional facility until such administrative remedies as are

14 available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2008).  The

15 exhaustion requirement applies regardless of the relief sought.

16 Booth v. Churner, 532 U.S. 731, 741 (2001).

17     "'[A]n action is "brought" for purposes of § 1997e(a) when the

18 complaint is tendered to the district clerk[]' . . . ."  Vaden v.

19 Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v.

20 Johnson, 362 F.3d 395, 400 (7th Cir. 2004)).  Therefore, prisoners

21 must "exhaust administrative remedies before submitting any papers

22 to the federal courts."  Vaden, 449 F.3d at 1048.

23     Section 1997e(a)'s exhaustion requirement creates an

24 affirmative defense.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th

25 Cir. 2003).  "[D]efendants have the burden of raising and proving

26 the absence of exhaustion."  Id. (footnote omitted).  In § 1983

27 actions, the affirmative defense of failure to exhaust

28

08cv0204 BEN (RBB)

administrative remedies may be raised through an unenumerated
motion to dismiss under Federal Rule of Civil Procedure 12(b).   Id.

Unlike Rule 12(b)(6) motions to dismiss for failure to state a
claim, "[i]n deciding a motion to dismiss for failure to exhaust
nonjudicial remedies, the court may look beyond the pleadings and
decide disputed issues of fact." Id. at 1119-20 (citing Ritza v.
Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th
Cir. 1988)).  "A court ruling on a motion to dismiss also may take
judicial notice of 'matters of public record.'"   Hazleton v.
Alameida, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005) (citing Lee v.
City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)).  But "if
the district court looks beyond the pleadings to a factual record
in deciding the motion to dismiss for failure to exhaust[,] . . .
the court must assure that [the plaintiff] has fair notice of his
opportunity to develop a record." Wyatt, 315 F.3d at 1120 n.14.

"[When] the district court concludes that the prisoner has not
exhausted nonjudicial remedies, the proper remedy is dismissal of
the claim without prejudice." Id. at 1120 (citing Ritza, 837 F.2d
at 368 n.3).  A factual finding that a plaintiff failed to exhaust
is reviewed under the clearly erroneous standard.   Id.

**B.    The Administrative Grievance Process**

"The California Department of Corrections [CDC] provides a
four-step grievance process for prisoners who seek review of an
administrative decision or perceived mistreatment:  an informal
level, a first formal level, a second formal level, and the
Director's level." Vaden, 449 F.3d at 1048-49 (citing Brown v.
Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005)).  The administrative
appeal system can be found in title 15, sections 3084.1 through

3085 of the California Code of Regulations.  <u>See</u> Cal. Code Regs. tit. 15, §§ 3084.1(a), 3084.5(a)-(e), 3084.6(c) (2009) <u>see also</u> <u>Brown</u>, 422 F.3d at 929-30 (citation omitted).  To comply with the CDC's administrative grievance procedure, an inmate is required to make an informal attempt to resolve the grievance with the staff involved before proceeding to the formal levels, unless the grievance is one excepted by sections 3084.5(a)(3) and 3084.7. Cal. Code Regs. tit. 15, § 3084.2(b) (2009).  An inmate must file his grievance "within 15 working days of the event or decision being appealed . . . ."  Cal. Code Regs. tit. 15, § 3084.6(c) (2009); <u>see also</u> <u>Brown</u>, 422 F.3d at 929.  But the informal level of the grievance process is bypassed when the appeal relates to eight specified actions.  Cal. Code Regs. tit. 15, § 3084.5(a)(3)(A)-(H) (2008).  There are other specific exceptions to the regular appeal process which are not applicable here.  Cal. Code Regs. tit. 15, § 3084.7 (2009).  Generally, inmates must appeal the grievance through the first, second, and third ("Director's") level of formal review.  Cal. Code Regs. tit. 15, § 3084.5(b)-(e).

**C.   <u>Standards Applicable to Pro Se Litigants</u>**

When a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and give the plaintiff the benefit of any doubts.  <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988); <u>see also</u> <u>Jackson v. Carey</u>, 353 F.3d 750, 757 (9th Cir. 2003).  The rule of liberal construction is "particularly important in civil rights cases." <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).  "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."

6

1   <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).   In

2   evaluating a motion to dismiss, the court may consider documents

3   attached to the complaint.   <u>Roth v. Garcia Marquez</u>, 942 F.2d 617,

4   625 n.1 (9th Cir. 1991).   "[The court] need not accept as true

5   conclusory allegations that are contradicted by documents referred

6   to in the complaint."   <u>Manzarek v. St. Paul Fire & Marine Ins. Co.</u>,

7   519 F.3d 1025, 1031 (9th Cir. 2008) (citing <u>Warren v. Fox Family</u>

8   <u>Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003).

9   ### III. PLAINTIFF'S EFFORTS TO EXHAUST

10       In deciding whether Defendant Petersen's Motion to Dismiss

11   should be granted, this Court considered Plaintiff's Amended

12   Complaint and the attached exhibits [doc. no. 7].   Goudlock

13   attached a copy of his inmate appeal form ("602"), in which he

14   complains that upon his transfer to R. J. Donovan Correctional

15   Facility on June 11, 2007, he was placed in an top floor cell, in

16   the upper bunk bed despite his doctor's orders directing otherwise.

17   (Am. Compl. 26-28.)   Plaintiff informed Correctional Officers

18   Thompson, Hamil, and Tyrell; Correctional Sergeant Cruz; two

19   unidentified correctional officers, and the CCI of the unit about

20   his improper placement to no avail.   (<u>Id.</u> at 27-28.)   Goudlock

21   explains:

22       [N]o one tried [to reassign Plaintiff to a lower tier
        cell and lower bunk] until 6-15-07 [when] I fell off
23       the top bunk severely injuring my left foot, slicing
        open the little toe.  I was taken by ambulance to the
24       hospital.  I reinjured my lower back, sprained my foot
        very badly, upon being examined at the clinic the
25       Doctor stated I could have been killed.  I am in
        constant pain[;] also I injured my right thigh with
26       several bruises.  I'm suffering due to staff gross
        neglect and deliberate indifference towards my safety.
27       All ignored my pleas for help until to[o] late.

28

1   (Id. at 28.)  Plaintiff also holds Lieutenant Walker responsible

2   because "it happened on his watch . . . ." (Id.)

3       Goudlock does not mention Defendant Petersen by name or refer

4   to an unidentified registered nurse in this grievance. (See id.

5   at 26-28.)  Plaintiff also does not allege he had to wait an

6   unreasonable amount of time to receive medical treatment or that

7   staff was deliberately indifferent to his medical needs and the

8   injuries he sustained on June 15, 2007. (Id.)

9       Plaintiff bypassed the informal level and his grievance was

10  denied at the first level of formal review on August 2, 2007.

11  (Id. at 23, 26.)  Goudlock's appeal was denied at the second level

12  of formal review. (Id. at 25.)  On December 22, 2007, his appeal

13  was denied at the third level of formal review. (Id. at 20-21.)

14  **A.   The Failure to Exhaust Administrative Remedies**

15      Defendant Petersen moves to dismiss Goudlock's Complaint

16  pursuant to the unenumerated portions of Federal Rule of Civil

17  Procedure 12(b) on the ground that Plaintiff has not properly

18  exhausted his administrative remedies as to her. (Def. Petersen's

19  Mot. Dismiss Attach. #1 Mem. P. & A. 3.)  Petersen explains,

20  "Although Plaintiff submitted a claim related to falling from the

21  top bunk and appealed that claim to the third level of review, he

22  did not ever submit an Eighth Amendment claim against Defendant

23  Petersen for deliberate indifference to his medical needs." (Id.)

24      Defendant has provided two declarations explaining that

25  Goudlock did not submit any grievances naming or referring to her

26  or alleging that Plaintiff had to wait too long for medical

27  treatment. (Def. Petersen's Mot. Dismiss Attach. #2 Grannis Decl.

28  3 (discussing third level appeals); Attach. #3 Franklin Decl. 3-4

8                                                          08cv0204 BEN (RBB)

(identifying appeals filed while Goudlock was at Donovan).)
Franklin is the Appeals Coordinator at R. J. Donovan Correctional
Facility and handles inmate appeals at the prison level. (<u>Id.</u>
Attach. #3 Franklin Decl. 1-2.) Grannis is the Chief of Inmate
Appeals Branch in Sacramento, California, which receives all
inmate appeals at the third level. (<u>Id.</u> Attach. #2 Grannis Decl.
1-2.)

A motion to dismiss for failure to exhaust differs from a
summary judgment motion. <u>Ritza v. Int'l Longshoremen's &</u>
<u>Warehousemen's Union</u>, 837 F.2d at 369. The Ninth Circuit, <u>id.</u>,
explained:

> [One] reason why a jurisdictional or related
> type of motion, raising matter in abatement
> . . . , should be distinguished from a motion
> for summary judgment relates to the method of
> trial. In ruling on a motion for summary
> judgment the court should not resolve any
> material factual issue . . . . If there is
> such an issue it should be resolved at
> trial . . . . On the other hand, where a
> factual issue arises in connection with a
> jurisdictional or related type of motion,
> . . . the court has a broad discretion as to
> the method to be used in resolving the factual
> dispute.

Moore's <u>Federal Practice</u>, <u>supra</u>, ¶ 56.03 at 56-61
(footnotes omitted); cf. <u>Thornhill Publishing Co. v.</u>
<u>General Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir.
1979) ("Faced with a factual attack on subject matter
jurisdiction, 'the trial court may proceed as it never
could under Rule 12(b)(6) or Fed. R. Civ. P. 56 . . . .
[T]he existence of disputed material facts will not
preclude the trial court from evaluating for itself the
merits of jurisdictional claims'" (quoting <u>Mortensen v.</u>
<u>First Fed. Sav. & Loan Ass'n.</u>, 549 F.2d 884, 891 (3d
Cir. 1977) (footnote omitted))).

<u>Accord</u> <u>Goethe v. California</u>, No. 2:07CV01945 MCE-GGH, 2008 U.S.
Dist. LEXIS 72807, at **3-4 (E.D. Cal. Aug. 19, 2008).

1      "Exhaustion of administrative remedies serves two main

2 purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006) (citing

3 McCarthy v. Madigan, 503 U.S. 140, 145 (1992)).  It first

4 "protects 'administrative agency authority'" by giving an agency

5 "'an opportunity to correct its own mistakes . . . before it is

6 haled into federal court,' and it discourages 'disregard of [the

7 agency's] procedures.'" Id. (quoting McCarthy, 503 U.S. at 145).

8 "Second, exhaustion promotes efficiency. . . . [It] 'may produce

9 a useful record for subsequent judicial consideration.'" Id.

10 (quoting McCarthy, 503 U.S. at 145).  These two objectives are met

11 when civil rights plaintiffs are forced to properly exhaust

12 administrative remedies and comply with deadlines and other

13 "critical" procedural rules set by the administrative agency. Id.

14 at 90-91.

15      Because the failure to exhaust is an affirmative defense, it

16 is the defendant's burden to raise and prove the absence of

17 exhaustion. Brown, 422 F.3d at 936.  In ruling on Defendant

18 Petersen's Motion, the Court may "look beyond the pleadings and

19 decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20.

20 "[T]he court has a broad discretion as to the method to be used in

21 resolving the factual dispute." Ritza, 837 F.2d at 369 (citation

22 omitted).  If the defendant has pleaded and proved a failure to

23 exhaust, the burden shifts to the plaintiff to present evidence

24 that he did exhaust administrative remedies. Ming Ching Jin v.

25 Hense, No. 03cv5282, 2005 WL 3080969, at *2 (E.D. Cal. Nov. 15,

26 2005).

27      Here, Goudlock completed an Inmate Appeal Form 602

28 complaining that he was improperly placed in an upper-tier cell,

08cv0204 BEN (RBB)

and in the top bunk, despite medical orders directing his
placement in a lower-tier cell, on the lower bunk. (Am. Compl.
26-28.) Plaintiff properly appealed the denial of his grievance
through the first, second, and Director's levels of formal review.
(Id. at 20-21, 23, 25.) Thus, Goudlock has properly exhausted his
grievance relating to his improper assignment to an upper-tier
cell, upper bunk.

Goudlock did not, however, mention Defendant Petersen by name
or reference in his grievance even though he specifically named or
identified eight other individuals involved in his improper
housing assignment. (Id. at 27-28.) Plaintiff also made no
allegations relating to an unreasonable delay or lack of medical
treatment for the injuries he sustained when he fell out of his
bed. (Id.)

In his Response to Defendant L. Petersen's Motion to Dismiss,
Goudlock explains that he did not include Petersen's name in his
grievance because he did not know her legal name when he competed
the form and "was too focused on the pain" to "seek her name at
the time of [his] late treatment . . . ." (Pl.'s Resp. 2.)
Plaintiff points to the "Action Requested" section of the form in
which he seeks compensation from "all staff named and yet to be
named" as evidence of his intent to include charges against
Petersen. (Id.)

Additionally, "when [he] stated the word 'Staf[f]' [in his
602 form] it was to include all those involved in this situation,
which does include Defendant L. Petersen." (Id.) Goudlock
contends that "the staff that responded to [his] inmate appeal
referred to the employees in question as 'Staff' and therefore,

using a blanket statement as well, . . . did include the specific

defendant, L. Petersen in the inmate appeal." (Id. at 3.)

"[E]xhaustion is not per se inadequate simply because an

individual later sued was not named in the grievances."   Jones v.

Bock, 549 U.S. 199, 219 (2007).  "Prisoners need comply only with

the prison's own grievance procedures to properly exhaust . . . ."

Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing

Jones, 549 U.S. at 218).  A prisoner in California is not required

to name all defendants in his grievance but must "describe the

problem and action requested."  Cal. Code Regs. tit. 15, §

3084.2(a); see also Thorns v. Ryan, No. 07-CV-00218-H (AJB), 2009

WL 230035, at *6 (S.D. Cal. Jan. 23, 2009) (citing Lewis v.

Mitchell, 416 F. Supp. 2d 935, 941-45 (S.D. Cal. 2005)); Jensen v.

Knowles, No. 2:02-cv-02373 JKS P, 2008 WL 5156694, at *4 (E.D.

Cal. Dec. 9, 2008) (explaining that a prisoner in California is

not required to "expressly name the defendant[]").  "[W]hen a

prison's grievance procedures are silent or incomplete as to

factual specificity, 'a grievance suffices if it alerts the prison

to the nature of the wrong for which redress is sought.'"

Griffin, 557 F.3d at 1120 (quoting Strong v. David, 297 F.3d 646,

650 (7th Cir. 2002)).

Goudlock's argument that he did not include Petersen's name

in his grievance because he did not know it is not persuasive.

Plaintiff did not need to identify the nurse by name as long as he

gave the prison sufficient notice of nature of the wrong.  Jones,

549 U.S. at 219; Jensen v. Knowles, 2008 WL 5156694, at *4.

Plaintiff's grievance does not contain any allegations

relating to the medical care he received for injuries sustained on

June 15, 2007, or any staff members at the clinic.  He has not
described the "problem and action requested" or stated any claim
against Petersen as required.  Cal. Code Regs. tit. 15, §
3084.2(a); Jones, 549 U.S. at 218;  Griffin, 557 F.3d at 1119.
Goudlock's subjective intent to initiate a grievance against
Petersen and seek compensation from "all staff named and yet to be
named" does not adequately alert the prison to a possible claim
against staff working in the medical clinic.  See Griffin, 557
F.3d at 1120.  Thus, Plaintiff has not properly exhausted his
administrative remedies for claim two in his Amended Complaint.
Defendant Petersen's Motion to Dismiss should be **GRANTED**.

Existing Ninth Circuit case law directs the district court to
dismiss the Complaint without prejudice.  Vaden, 449 F.3d at 1051
(citing Wyatt, 315 F.3d at 1120).  But Vaden v. Summerhill, 449
F.3d 1047, and Wyatt v. Terhune, 315 F.3d 1108, were decided prior
to Woodford v. Ngo.  Since the Supreme Court's decision in
Woodford v. Ngo, 548 U.S. 81, it may no longer be appropriate to
dismiss this Complaint with leave to amend if it is too late for
Goudlock to properly exhaust administrative remedies.  A prisoner
would "have little incentive to comply with the system's
procedural rules unless noncompliance carries a sanction."
Woodford v. Ngo, 548 U.S. at 95.  Goudlock is in that situation.
Because a grievance against Peterson was not filed within fifteen
working days of the action being challenged, any attempt to file
it now is untimely.  See Cal. Code Regs. tit. 15, § 3084.6(c).

Exceptions to the exhaustion requirement are limited.  See
Booth, 532 U.S. at 741.  In Booth, the Supreme Court explained,
"Thus, we think that Congress has mandated exhaustion clearly

1   enough, regardless of the relief offered through administrative

2   procedures." Id. (citing McCarthy, 503 U.S. at 144) (footnote

3   omitted).  "'Where Congress specifically mandates, exhaustion is

4   required[.]'" Id. (quoting McCarthy, id.)  Booth and Woodford

5   effectively eliminated most exceptions to exhaustion.

6        An inmate must file his grievance "within 15 working days" of

7   the event being appealed.  Cal. Code Regs. tit. 15, § 3084.6(c).

8   Goudlock's injury and interactions with Nurse Petersen occurred on

9   June 15, 2007, over two years ago; Plaintiff no longer has time to

10  exhaust his administrative remedies against Defendant Petersen.

11  See id.; (Am. Compl. 4-6.)  There are no applicable exceptions to

12  the exhaustion requirement.  For all these reasons, Plaintiff's

13  Complaint against Petersen should be **DISMISSED WITHOUT LEAVE TO**

14  **AMEND**.

15                      **IV. ABSOLUTE IMMUNITY**

16       The Eleventh Amendment grants the states immunity from

17  private civil suits.  U.S. Const. amend. XI; Seven Up Pete Venture

18  v. Schweitzer, 523 F.3d 948, 952 (9th Cir. 2008); Henry v. County

19  of Shasta, 132 F.3d 512, 517 (9th Cir. 1997), as amended, 137 F.3d

20  1372 (9th Cir. 1998).  This immunity applies to civil rights

21  claims brought under § 1983; thus, an inmate cannot recover

22  damages from the state under § 1983 unless the state waives its

23  immunity.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66

24  (1989); Barber v. Hawaii, 42 F.3d 1185, 1198 (9th Cir. 1994).  A

25  federal court only has jurisdiction over a suit against a state

26  when the relief sought is "prospective injunctive relief in order

27  to end a continuing violation of federal law."  Armstrong v.

28  Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997) (quoting Seminole

<u>Tribe of Fla. v. Florida</u>, 517 U.S. 44, 73 (1996)) (internal quotations omitted); <u>see also</u> <u>Seven Up Pete Venture</u>, 523 F.3d at 953.

Eleventh Amendment immunity also extends to state officials sued in federal court in their official capacities. <u>Will</u>, 491 U.S. at 71 (citing <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985) (explaining that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[]"); <u>Seven Up Pete Venture</u>, 523 F.3d at 952-53. "As such, it is no different from a suit against the State itself." <u>Will</u>, 491 U.S. at 71 (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985); <u>Monell</u>, 436 U.S. at 690 n.55).

Petersen argues, "To the extent [Goudlock] request[s] . . . monetary damages against Defendant Petersen in her official capacity, the Court should dismiss Plaintiff's First Amended Complaint under the Eleventh Amendment." (Def. Petersen's Mot. Dismiss Attach. #1 Mem. P. & A. 4.)

Plaintiff sued Petersen, a registered nurse, in her official and individual capacities. (Am. Compl. 2.) Plaintiff's claim against Petersen in her official capacity constitutes a claim against the State of California, which is absolutely immune from liability for damages. <u>See</u> <u>Brandon</u>, 469 U.S. at 471. Accordingly, Goudlock could only proceed against Defendant Petersen as an individual when seeking compensatory damages, but this claim would also be time barred.

08cv0204 BEN (RBB)

## V. DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

"Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  To establish this, there is a two-part test in the Ninth Circuit.  Jett, 439 F.3d at 1096.  "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain.'  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."  Id. (citations omitted).

"Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second element, deliberate indifference, is pled if the prisoner alleges facts that show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  Jett, 439 F.3d at 1096.  To be found liable for an Eighth Amendment violation, a prison "official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." Farmer v. Brennen, 511 U.S. 825, 837

(1994). "This is true whether the indifference is manifested by

prison doctors in their response to the prisoner's needs or by

prison guards in intentionally denying or delaying access to

medical care or intentionally interfering with the treatment once

prescribed." Estelle, 429 U.S. at 104-05 (footnotes omitted); see

also Erickson v. Pardus, 551 U.S. 89, 90 (2007) (citing Id.).  The

indifference to medical needs must be substantial; inadequate

treatment due to malpractice, or even gross negligence, does not

amount to a constitutional violation.  Wilson v. Seiter, 501 U.S.

294, 297 (1991) (quoting Estelle, 429 U.S. at 105-06); Castaneda

v. United States, 546 F.3d 682, 694 n.12 (9th Cir. 2008); Jett,

439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1059); Wood v.

Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

A defendant's acts or omissions will not rise to the level of

a constitutional violation unless there is a reckless disregard of

the risk of serious harm to the prisoner.  Farmer, 511 U.S. at

836.  The official must have "know[n] that [the] inmate[] face[d]

a substantial risk of serious harm and disregard[ed] that risk by

failing to take reasonable measures to abate it."  Id. at 847.

Plaintiff contends in count two of his Amended Complaint that

Defendant Petersen violated the Eighth Amendment by making him

wait an unreasonable amount of before he was provided with medical

care.  (Am. Compl. 4.)  He alleges that on he arrived at Facility

One Medical Clinic at approximately 8:15 a.m. on June 15, 2007.

(Id.)  Goudlock claims he experienced profuse bleeding, and his

"sock was soaked with blood . . . ."  (Id.)  According to

Plaintiff, Nurse Petersen delayed his treatment for over five

hours until Dr. Dugan learned that Goudlock had been waiting and
ordered that Goudlock be taken to the triage area for stitches.
(Id.)  Once Plaintiff arrived at triage, he was told that because
so much time had elapsed since his injury, stitches were no longer
an option.  (Id.)  Goudlock explains, "I could not receive the
best option of treatment due to L. Petersen, R.N. ignoring my need
for medical care, therefore violating my rights, and causing me
unreasonable suffering."  (Id.)

Plaintiff attached to his Amended Complaint his Health Care
Service Request Form, dated June 15, 2007, and Dr. Dugan's notes
from a follow-up appointment on June 18, 2007.  (Id. at 6-7.)  In
a note also attached to the Amended Complaint, Goudlock describes
what he perceives to be a discrepancy.

> Notice the two times on this [Health Care
> Service Request] Form.  R.N. Petersen put she
> initially saw me at 09:08 - which is a lie, I
> was told to fill out this form on [June 18,
> 2007]. A Monday - because neither Dr. Dugan
> nor the R.N. examined me on [June 15, 2007].
> Neither saw me until [June 18, 2007] See
> attached form.  That is why I put last night
> I fell instead of this morning I fell.

(Id. at 5.)

Part one of the "Health Services Request Form" was completed
by the patient and states, "Late last night I fell out of the top
bunk injured my left side knee and a little toe area."  (Id. at
6.)  Goudlock signed the form and dated it June 15, 2007.  (Id.)
The remainder of the form appears to have been completed by Nurse
Petersen.  (Id.)

Petersen signed her name as the nurse who reviewed the form
at approximately 9:00 a.m. on June 15, 2007.  (Id.)  As part of
her physical assessment of Goudlock, Petersen wrote that he had a

laceration with avulsion (tearing of the skin) on his small left-toe.  (Id.)  She found that Plaintiff had an "[a]lteration in skin integrity [related to a] left toe lac[eration] [and] foot trauma." (Id.)  Petersen referred Plaintiff "to [triage treatment area] for [left] foot injury eval[uation]/x-ray/tetanus."  (Id.)  She signed and dated the form June 15, 2007, at 1:40 p.m.  (Id.)  She made no observations about excessive bleeding or necessity of stitches. Additionally, the form does not indicate when Goudlock received treatment.  Instead, it reports the times when the nurse reviewed the form and when she completed it.  (Id.)

Dr. Dugan's notes are dated June 18, 2007, and describe the appointment as a follow-up to Plaintiff's triage treatment on June 15, 2007, after Goudlock "f[ell] from top bunk [and] injured [his left] knee [and] toe."  (Id. at 7.)  Dr. Dugan's physical assessment of Plaintiff was that he had a laceration on the tip of his left small-toe.  (Id.)  Goudlock was diagnosed with morbid obesity, glucose intolerance, and hypertension.  (Id.)  He was not prescribed any treatment for his toe injury, but he was placed on a metformin, a diabetes medication, and his dosage of Vasotec, a blood pressure medication, was increased.  (Id.)  Dr. Dugan made no observations about bleeding or stitches.

In Goudlock's form 602, he states that on June 15, 2007, "[he] fell off the top bunk severely injuring [his] left foot, slicing open the little toe. [He] was taken by ambulance to [the] hospital."  (Id. at 28.)  Goudlock further explains that he "reinjured [his] lower back, sprained [his] foot very badly, upon being examined at the clinic, the doctor stated [he] could have

been killed. [He is] in constant pain also [he] injured [his]
right thigh, with several bruises." (<u>Id.</u>)

These allegations are not sufficient to establish that
Goudlock had a serious medical need, and the medical records
attached to the Amended Complaint undermine Plaintiff's claim.
Goudlock's alleged bleeding and need for stitches were not found
to be "important and worthy of comment or treatment." See <u>Lopez</u>,
203 F.3d at 1131 (quoting <u>McGuckin</u>, 974 F.2d at 1059-60).  Thus,
Plaintiff has not alleged that he had a serious medical need.

To satisfy the second element, Defendant Petersen must have
known that Goudlock faced a substantial risk of serious harm when
she allegedly forced him to wait over five hours before he was
taken to the triage treatment area for treatment.  (Am. Compl. 4.)
Goudlock's contentions about the timing of medical care are
inconsistent throughout his Amended Complaint and refuted by his
attachments.  (<u>Id.</u> at 4-7.)

In count two, Plaintiff alleges that both Nurse Petersen and
Dr. Dugan saw him on June 15, 2007, but Plaintiff contends he was
not examined by either Nurse Petersen or Dr. Dugan until June 18,
2007.  (<u>Id.</u> at 4-5.)  His exhibits indicate that he was seen by
Nurse Petersen on June 15, 2007, and examined in a follow-up visit
by Dr. Dugan on June 18, 2007.  (<u>Id.</u> at 6-7.)  Finally, his 602
form states that after he was injured on June 15, 2007, he was
taken to a hospital by ambulance rather taken to the clinic at the
correctional facility.  (<u>Id.</u> at 28.)  The Court will not accept
allegations that are contradicted by the Amended Complaint and by
Goudlock's attachments.  See <u>Manzarek</u>, 519 F.3d at 1031.  The

Court cannot "supply essential elements" of the Plaintiff's claim. See Ivey, 673 F.2d at 268.

Arguably, Plaintiff has alleged that Petersen purposefully failed to respond to his pain or possible medical need, but he has not sufficiently alleged a serious medical need.  See Jett, 439 F.3d at 1096.  Allowing Plaintiff to sit in the waiting area for several hours while his toe continued to bleed and Goudlock missing his opportunity for stitches may constitute malpractice or even gross negligence, but more than gross negligence or malpractice is required to allege a serious medical need.  See Wilson v. Seiter, 501 U.S. at 297; Castaneda, 546 F.3d at 694 n.12.  Thus, Plaintiff has failed to state a claim for deliberate indifference to his serious medical need.

Ordinarily, Defendant Petersen's Motion to Dismiss Plaintiff's count two should be granted with leave to amend so that he can attempt to allege a serious medical need.  But because Goudlock has not exhausted this claim, and the time to exhaust has expired, the Respondent's Motion should be **GRANTED WITHOUT LEAVE TO AMEND**.

### VI. QUALIFIED IMMUNITY

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A constitutional right is "clearly established" if it is "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Hope v. Pelzer, 536

U.S. 730, 739 (2002) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).  This standard ensures that government officials are on notice of the ilegality of their conduct before they are subjected to suit.  <u>Id.</u> (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001)).  Qualified immunity is immunity from a suit for monetary damages, but it is not immunity from a suit seeking declaratory or injunctive relief.  <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469, 1472 (9th cir. 1993).  It protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."  <u>Hope</u>, 536 U.S. at 736; <u>see also</u> <u>Saucier</u>, 533 U.S. at 201.  If the allegations make out a constitutional violation, the next step is to determine whether the right alleged to have been violated is "clearly established." <u>Saucier</u>, 533 U.S. at 201.  In ruling on qualified immunity, the court must decide the "'purely legal' issue of 'whether facts alleged [by the plaintiff] support a claim of violation of clearly established law.'"  <u>Lytle v. Wondrash</u>, 182 F.3d 1083, 1086 (9th Cir. 1999) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 528 n.9 (1985) (reversing denial of defendants' motion for summary judgment)).  The Supreme Court recently "reconsider[ed] the procedure required in <u>Saucier</u>, [and] conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."  <u>Pearson v. Callahan</u>, __ U.S. __, 129 S. Ct. 808, 818 (2009).  The court may exercise its discretion to

1  determine which of the two prongs of the qualified immunity
2  analysis should be addressed first in a particular case.  <u>Id</u>.

3      As discussed above, the Court has already found that
4  Plaintiff has not stated a claim that Petersen was deliberately
5  indifferent to his serious medical need.  Under both <u>Saucier</u> and
6  <u>Pearson</u>, the Court's inquiry may end here.  <u>See</u> <u>Pearson</u>, 129 S.
7  Ct. at 818 (explaining that "[i]n some cases, a discussion of why
8  the relevant facts do not violate clearly established law may make
9  it apparent that in fact the relevant facts do not make out a
10 constitutional violation at all[]"); <u>Saucier</u>, 533 U.S. at 201
11 (holding that "[i]f no constitutional right would have been
12 violated were the allegations established, there is no necessity
13 for further inquiries concerning qualified immunity[]").

14     Accordingly, Defendant Petersen is entitled to qualified
15 immunity from liability based on the claim alleged against her in
16 count two of Plaintiff's Amended Complaint.  Defendant's motion to
17 dismiss Goudlock's claim for damages against her should be **GRANTED**
18 **WITHOUT LEAVE TO AMEND**.

19            **VII. <u>CONCLUSION AND RECOMMENDATION</u>**

20     Goudlock has not exhausted his administrative remedies
21 regarding his claim against Defendant Petersen.  For this reason,
22 count two of the Amended Complaint should be **DISMISSED WITHOUT**
23 **LEAVE TO AMEND**.  In addition, Plaintiff failed to state a claim
24 for deliberate indifference to serious medical need.  Even if
25 Goudlock were permitted to amend this claim against Petersen,
26 Defendant's Motion to Dismiss count two should be **GRANTED WITHOUT**
27 **LEAVE TO AMEND** because the failure to timely exhaust is fatal to
28 the cause of action.  Finally, this Defendant is entitled to

1    Eleventh Amendment immunity from a claim against her in her
2    official capacity, and she is entitled to qualified immunity on
3    any claim for damages.

4        This Report and Recommendation will be submitted to the
5    United States District Court judge assigned to this case, pursuant
6    to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file
7    written objections with the Court and serve a copy on all parties
8    on or before September 7, 2009.  The document should be captioned
9    "Objections to Report and Recommendation."  Any reply to the
10   objections shall be served and filed on or before September 21,
11   2009.  The parties are advised that failure to file objections
12   within the specified time may waive the right to appeal the
13   district court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157
14   (9th Cir. 1991).

15

16   Dated:  August 4, 2009

                                      **Ruben B. Brooks**
17                                   United States Magistrate Judge

18   cc:  Judge Benitez
          All Parties of Record
19

20

21

22

23

24

25

26

27

28