1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  JACIE LEE GOUDLOCK, JR.,          )   Civil No. 08cv0204 AJB(RBB)
                                      )
12                  Plaintiff,        )   **REPORT AND RECOMMENDATION**
                                      )   **GRANTING IN PART AND DENYING**
13                                    )   **IN PART DEFENDANTS' MOTION TO**
    v.                                )   **DISMISS PLAINTIFF'S SECOND**
14                                    )   **AMENDED COMPLAINT [ECF NO. 70]**
                                      )
15  R. PEREZ, Correctional            )
    Sergeant; R. AMILING,             )
16  Correctional Officer; R.          )
    ESQUILIN, Correctional Officer    )
17                                    )
                    Defendants.       )
18  _____)

19       Plaintiff Jacie Lee Goudlock, a former state prisoner

20  proceeding pro se and in forma pauperis, filed a Complaint on

21  February 1, 2008, pursuant to 42 U.S.C. § 1983 [ECF No. 1].  He

22  filed an Amended Complaint on August 8, 2008 [ECF No. 7], and a

23  Second Amended Complaint on April 11, 2011 [ECF No. 63].  In his

24  Second Amended Complaint, Goudlock asserts that his Eighth

25  Amendment rights were violated when two correctional officers

26  failed to respond to Plaintiff's calls for help after he fell from

27

28

1  the top bunk bed in his cell.  (Second Am. Compl. 3, ECF No. 63.)[1]

2  Goudlock further contends that a correctional sergeant violated

3  Plaintiff's rights by ignoring his lower bunk medical accommodation

4  and disregarding his expressed concerns about sleeping in an upper

5  bunk bed.  (Id. at 11.)

6      The individual Defendants have fluctuated over the nearly

7  four-year life of this action as Goudlock struggled to identify and

8  serve the Defendants.  The Court dismissed Plaintiff's original

9  Complaint sua sponte for failing to state a claim upon which relief

10 could be granted [ECF No. 6].  All but one of the Defendants named

11 in the Amended Complaint were dismissed for various reasons.  When

12 Goudlock filed the Amended Complaint, he did not name two of the

13 original Defendants, Robert Hernandez and Silvia Garcia, and they

14 were subsequently dismissed [ECF No. 12].  Nurse Peterson

15 successfully moved to dismiss the cause of action Plaintiff had

16 alleged against her [ECF Nos. 23, 33-34].  Correctional Sergeant

17 Cruz was dismissed from the lawsuit because Goudlock did not serve

18 Cruz within 120 days of filing the Amended Complaint [ECF No. 48].

19 Therefore, the only remaining Defendant named in the Amended

20 Complaint was Correctional Officer Thompson.

21     Defendant Thompson filed a Motion to Dismiss the First Amended

22 Complaint on November 19, 2010 [ECF No. 52], which Goudlock did not

23 oppose.  While Thompson's Motion to Dismiss was pending, Plaintiff

24 filed a Motion to Amend Complaint — Adding New Defendants Sgt. R.

25 Perez, R. Amiling, R. Esquilin [ECF No. 53].  There, Goudlock

26 sought to substitute Correctional Sergeant R. Perez for

27 _____

28      [1]  Because the pleading is not consecutively paginated, the
   Court will cite to the Second Amended Complaint using the page
   numbers assigned by the electronic case filing system.

Correctional Sergeant Cruz, in light of information Plaintiff had discovered from the prison litigation coordinator.  (Mot. Amend Compl. 1-2, ECF No. 53.)  Goudlock also sought to substitute Correctional Officers R. Amiling and R. Esquilin for two of the three unknown defendants initially sued as "3 Unknown C.O.'s on 1st Watch, Building 3."  (Id. at 2.)  Defendant Thompson, the remaining named Defendant, did not oppose Plaintiff's Motion to Amend.

Goudlock had sought to voluntarily dismiss Thompson in a letter Plaintiff attempted to file with the Court, which was rejected.  (Notice Doc. Discrepancy 1, ECF No. 49; Report & Recommendation 24, ECF No. 59.)  The Court subsequently permitted the letter to be filed; as a result, Thompson's Motion to Dismiss was denied as moot.  (Id.; see Order Adopting Report & Recommendation 1-2, ECF No. 62.)  Goudlock's Motion to Amend to add three new Defendants, Amiling, Equilin, and Perez, was granted.  (Id.)  The Plaintiff was explicitly limited in the type of claims he could allege against the new Defendants.  (See Report & Recommendation 24, ECF No. 59.)

Goudlock then filed a Second Amended Complaint against Correctional Sergeant R. Perez, Correctional Officer R. Amiling, and Correctional Officer R. Esquilin.  (Second Am. Compl. 1, ECF No. 63.)  On July 22, 2011, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint was filed, along with a Memorandum of Points and Authorities [ECF No. 70].  Plaintiff's Opposition to Defendants' Motion to Dismiss [Second] Amended

Complaint was filed on July 28, 2011 [ECF No. 71].[2]  Amiling,
Esquilin, and Perez did not file a reply.

     The Court finds that Defendants' Motion to Dismiss is suitable
for resolution on the papers.  See S.D. Cal. Civ. R. 7.1(d)(1).
After reviewing the Second Amended Complaint, the Motion to Dismiss
and attachment, and Goudlock's Opposition, the Motion to Dismiss
should be **GRANTED** in part and **DENIED** in part.

**I.  FACTUAL BACKGROUND**

     The allegations in the Second Amended Complaint arise from
events that occurred while Goudlock was incarcerated at Richard J.
Donovan State Prison ("Donovan") in San Diego, California.  (Second
Am. Compl. 1, ECF No. 63.)

     In count one, the Plaintiff alleges that on June 15, 2007, at
approximately 4:00 a.m., a medical condition caused him to suddenly
fall asleep while he was on the top bunk in "building '3' facility
(1) cell 220 up."  (Id. at 3.)  As a result, Goudlock fell off the
bunk, twisted his ankle, shaved skin off of his right thigh, and
cut his left foot in a way that caused it to bleed profusely and
require stitches.  (Id.)  The fall also caused further damage to
"an already damaged ciatic nerve."  (Id.)  In support of his claim,
Plaintiff attaches copies of documents reflecting the incident as
well as his medical condition before and after the fall.  (Id.)

     Goudlock contends that at the time of the fall, he continually
screamed for medical assistance from Defendants Esquilin and
Amiling, the on-duty officers, but they refused to respond.  (Id.)
Plaintiff argues that after approximately thirty minutes had

---

     [2]  The Court will also cite to Plaintiff's Opposition using
the case numbers assigned by the electronic filing system.

4

elapsed without any response, the pain had increased and was nearly
unbearable.  (Id.)  Goudlock asked his cellmate to yell for medical
assistance; his cellmate began screaming, "Man down."  (Id.)
Plaintiff maintains that Defendants Amiling and Esquilin heard the
pleas for help, but chose to ignore them.  (Id.)  By failing to
act, the officers violated Goudlock's Eighth Amendment rights to be
free from cruel and unusual punishment and to receive adequate
medical care.  (Id.)  The Plaintiff additionally asserts that
Defendants caused him to suffer extreme pain unnecessarily without
medical treatment.  (Id.)

In count two, Goudlock alleges that on June 12, 2007, three
days before his fall, he spoke to Correctional Sergeant Perez about
the dangerous housing conditions Plaintiff was subject to.  (Id. at
11.)  Goudlock told Defendant Perez that the day before, on June
11, 2007, two officers in building three had "forced" Plaintiff
into a top bunk in a upper-tier cell.  (Id.)  According to
Goudlock, he showed Sergeant Perez the medical chrono requiring
that Plaintiff be assigned a ground-floor cell and a bottom bunk.
(Id.)  The Defendant then asked Plaintiff whether his medical
condition was documented in his file, and Goudlock confirmed that
it was.  (Id.)  Plaintiff explained that he also suffered from
severe sleep apnea and had already fallen from his bunk bed at
California Rehabilitation Center ("CRC") in Norco, California,
where he was incarcerated before his transfer to Donovan.  (Id.)
Before the June 15, 2007 fall, the Plaintiff spoke to Sergeant
Perez two additional times and provided him with all of his
documentation.  (Id.)

08cv0204 AJB(RBB)

Goudlock contends that despite this notice, Defendant Perez chose not to take any action and instead permitted Plaintiff to remain housed in a dangerous living condition. (See id.) Plaintiff maintains that Perez could have changed Goudlock's housing assignment. (See id.)  Because Defendant failed to respond to the warning, Plaintiff was forced  to live in conditions inadequate for his medical condition. (See id.)  Further, Goudlock contends that Perez did not report the malicious acts of the correctional officers under his command.  (Id.)

## II.   LEGAL STANDARDS APPLICABLE TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Motions to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999).  "The old formula -- that the complaint must not be dismissed unless it is beyond doubt without merit -- was discarded by the Bell Atlantic decision [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)]."  Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp., 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to

6

be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004) (citing <u>Karam v. City of Burbank</u>, 352 F.3d 1188, 1192 (9th Cir. 2003)); <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995); <u>N.L. Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 563 n.8.  A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001) (citing <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); <u>see</u> <u>Halkin v. VeriFone, Inc.</u>, 11 F.3d 865, 868 (9th Cir. 1993); <u>see also</u> <u>Cholla Ready Mix, Inc.</u>, 382 F.3d at 973 (quoting <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on a Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of

fact, or unreasonable inferences." <u>Sprewell v. Golden State</u>
<u>Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to
state a claim, courts may not generally consider materials outside
of the pleadings.  <u>Schneider v. Cal. Dep't of Corrs.</u>, 151 F.3d
1194, 1197 n.1 (9th Cir. 1998); <u>Jacobellis v. State Farm Fire &</u>
<u>Cas. Co.</u>, 120 F.3d 171, 172 (9th Cir. 1997); <u>Allarcom Pay</u>
<u>Television Ltd. v. Gen. Instrument Corp.</u>, 69 F.3d 381, 385 (9th
Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the
complaint."  <u>Schneider</u>, 151 F.3d at 1197 n.1.  This precludes
consideration of "new" allegations that may be raised in a
plaintiff's opposition to a motion to dismiss brought pursuant to
Rule 12(b)(6).  <u>Id.</u> (citing <u>Harrell v. United States</u>, 13 F.3d 232,
236 (7th Cir. 1993)).

"When a plaintiff has attached various exhibits to the
complaint, those exhibits may be considered in determining whether
dismissal [i]s proper . . . ."  <u>Parks Sch. of Bus., Inc.</u>, 51 F.3d
at 1484 (citing <u>Cooper v. Bell</u>, 628 F.2d 1208, 1210 n.2 (9th Cir.
1980)).  The court may also consider documents "'whose contents are
alleged in a complaint and whose authenticity no party questions,
but which are not physically attached to the [plaintiff's]
pleading.'"  <u>Sunrize Staging, Inc. v. Ovation Dev. Corp.</u>, 241 F.
App'x 363, 365 (9th Cir. 2007) (quoting <u>Janas v. McCracken (In re</u>
<u>Silicon Graphics Inc. Sec. Litig.)</u>, 183 F.3d 970, 986 (9th Cir.
1999)) (alteration in original); <u>see Stone v. Writer's Guild of Am.</u>
<u>W., Inc.</u>, 101 F.3d 1312, 1313-14 (9th Cir. 1996).

These Rule 12 (b)(6) guidelines apply to Defendants' Motion to
Dismiss.

08cv0204 AJB(RBB)

B.    <u>Standards Applicable to Pro Se Litigants</u>

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled."  <u>Ivey v. Bd. of Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  <u>Id.</u>; <u>see also Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim."  <u>Jones</u>, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the Court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies.  <u>Karim-Panahi</u>, 839 F.2d at 623-24.  But where amendment of a pro se litigant's complaint would be futile, denial

1   of leave to amend is appropriate.   See <u>James v. Giles</u>, 221 F.3d

2   1074, 1077 (9th Cir. 2000).

3   **C.   <u>Stating a Claim Under 42 U.S.C. § 1983</u>**

4        To state a claim under § 1983, the plaintiff must allege facts

5   sufficient to show (1) a person acting "under color of state law"

6   committed the conduct at issue, and (2) the conduct deprived the

7   plaintiff of some right, privilege, or immunity protected by the

8   Constitution or laws of the United States.   42 U.S.C.A. § 1983

9   (West 2010); <u>Shah v. County of Los Angeles</u>, 797 F.2d 743, 746 (9th

10  Cir. 1986).

11                **III.   DEFENDANTS' MOTION TO DISMISS**

12       Defendants Amiling, Esquilin, and Perez argue that Goudlock

13  fails to state an Eighth Amendment claim for deliberate

14  indifference to serious medical needs.   (Mot. Dismiss 2, ECF No.

15  70.)   The Defendants also assert that they are entitled to Eleventh

16  Amendment immunity as well as qualified immunity.   (<u>Id.</u>)

17       Defendant Perez is only named in count two and generally moves

18  to dismiss the claim in its entirety, although he only

19  substantively addresses Plaintiff's deliberate indifference to a

20  serious medical need claim.   (<u>See id.</u> Attach. #1 Mem. P. & A. 4-6.)

21  Sergeant Perez does not argue that Goudlock's conditions of

22  confinement claim for failure to prevent harm should be dismissed.

23  (<u>See id.</u>; Report & Recommendation 20-21, ECF No. 59 (giving

24  Plaintiff leave to amend his deliberate indifference to a serious

25  medical need claim as well as his conditions of confinement

26  claim).)   Thus, whether Goudlock adequately states a conditions of

27  confinement cause of action in count two is not before the Court in

28  ruling on the Motion to Dismiss.

1    Also in count two, Plaintiff argues that "Sergeant Perez
2  failed to report malicious acts perpetrated by correctional
3  officers under his command." (Second Am. Compl. 11, ECF No. 63.)
4  To the extent Goudlock intends to allege a third claim against
5  Perez for failing to report staff misconduct, Plaintiff was not
6  given leave to include that claim in his Second Amended Complaint.
7  (See Report & Recommendation 20-21, ECF No. 59; Order Adopting
8  Report & Recommendation 1-2, ECF No. 62.)  Furthermore, Goudlock
9  does not appear to have exhausted this allegation in his inmate
10  grievance, as required.  (See generally Second Am. Compl. 14-25,
11  ECF No. 63); see also 42 U.S.C.A. § 1997e(a) (West 2003).

12    Accordingly, the Court's consideration of Sergeant Perez's
13  Motion to Dismiss count two is limited to whether the Plaintiff
14  states a deliberate indifference to a serious medical need claim.

15  **A.   Deliberate Indifference to Serious Medical Needs**

16    The Eighth Amendment requires that inmates have "ready access
17  to adequate medical care." Hoptowit v. Ray, 682 F.2d 1237, 1253
18  (9th Cir. 1982).  Deliberate indifference to serious medical needs
19  violates the Eighth Amendment's prohibition against cruel and
20  unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).
21  To state a claim, a prisoner's allegations must satisfy two
22  requirements, one objective and the other subjective.  Jett v.
23  Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Lopez, 203 F.3d at
24  1132-33 (quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.
25  1995)).  The plaintiff must first establish a "serious medical
26  need" by showing that "failure to treat a prisoner's condition
27  could result in further significant injury or the 'unnecessary and
28  wanton infliction of pain.'" Jett, 439 F.3d at 1096 (quoting

McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)).  "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."  Id. (citing McGuckin, 974 F.2d at 1060).

With regard to the objective requirement, "[e]xamples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez, 203 F.3d at 1131 (quoting McGuckin, 974 F.2d at 1059-60).

Under the subjective element, prison officials are deliberately indifferent to a prisoner's serious medical needs when the officials "'deny, delay or intentionally interfere with medical treatment.'"  Linderman v. Vail, 59 F. App'x 180, 182-83 (9th Cir. 2003) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002)).  "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Inadequate treatment due to medical malpractice, negligence, or even gross negligence, does not rise to the level of a constitutional violation.  See Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle, 429 U.S. at 105-06); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  A defendant's acts or omissions will not amount to a constitutional violation unless there is reckless disregard of a risk of serious harm to the prisoner.  Farmer, 511 U.S. at 836.  The official must have

1  "know[n] that [the] inmate[] face[d] a substantial risk of serious

2  harm and disregard[ed] that risk by failing to take reasonable

3  measures to abate it." <u>Farmer</u>, 511 U.S. at 847.

4     **1.  Count One:  Defendants Amiling and Esquilin**

5     Correctional Officers Amiling and Esquilin are only named in

6  count one; they contend that Goudlock has failed to state a

7  deliberate indifference to serious medical needs claim against

8  them.  (Mot. Dismiss Attach. #1 Mem. P. & A. 4-5, 7-8, ECF No. 70.)

9        **a.  Serious medical need**

10     As to the objective requirement of the Eighth Amendment

11  inquiry, these two Defendants allege that Plaintiff's injuries were

12  insufficient to establish a serious medical need.  (<u>Id.</u> at 4.)  The

13  officers challenge Goudlock's claim that he was bleeding profusely.

14  (<u>Id.</u>)  Defendants argue that the Health Care Services Request Form

15  that Goudlock completed immediately after his fall shows that

16  Plaintiff stated that he injured his left knee and his toe.  (<u>Id.</u>

17  (citing Second Am. Compl. 6, ECF No. 63).)  Also, the portion of

18  the form completed by the treating nurse indicates that Goudlock

19  only had a toe laceration and a possible foot injury.  (<u>Id.</u> at 5.)

20  Defendants maintain that the nurse did not document any profuse

21  bleeding or need for stitches, which she would have noted had those

22  conditions existed.  (<u>Id.</u>)  Moreover, Plaintiff does not assert

23  that he suffered any further serious injury, either immediate or

24  ongoing, from the purported thirty-minute delay in treatment.  (<u>See</u>

25  <u>id.</u>)

26     In response, Goudlock insists that his injuries were serious.

27  (Opp'n 4, ECF No. 71.)  He alleges that his accident occurred at

28  4:00 a.m., and he bled for four hours without any response from

Defendants.  (See id. at 2, 4.)  Plaintiff states that his cell door was finally opened at 8:00 a.m. for morning meal service; the registered nurse completed the health care request at 9:00 a.m., and Goudlock was taken by ambulance to the Triage and Treatment Area at roughly 1:00 p.m.  (See id. (citing Second Am. Compl. 6, ECF No. 63).)  Although he bled immediately, Plaintiff argues that over the course of four hours, the bleeding slowed.  (See id. at 4.)  Plaintiff submits, "I was still bleeding and in horrorable [sic] pain and my foot was wrapped in a towel[.]  [A]ll that nurse did was write her finding based on what I had all ready [sic] wrote."  (Id.)  The triage nurse ultimately told Goudlock that stitches were no longer an option because so much time had elapsed. (Id.)  Plaintiff reemphasizes that he went without medical care from 4:00 a.m. to 9:00 a.m., and then from 9:00 a.m. to 1:30 p.m., which is approximately nine hours, not thirty minutes.  (See id. at 4-5.)

In the Second Amended Complaint, Goudlock alleges that on June 15, 2007, at roughly 4:00 a.m., he fell from the top bunk bed in his cell while sleeping, striking the floor.  (Second Am. Compl. 3, ECF No. 63.)  He "cut [his] left foot to the point that the injury needed stitches, and was bleeding profusely," and he "twist[ed] [his] ankle - shaving off skin on [his] right thigh, and causing further damage to an already damaged [s]ciatic nerve."  (Id.) Goudlock argues that he suffered "great pain and agony."  (Id.) The injuries Plaintiff described in his grievance are consistent. There, he complained that he had severely injured his left foot and right thigh, sliced open his toe, reinjured his lower back, sprained his foot, and sustained several bruises.  (Id. at 23.)

According to Goudlock, the examining physician called custody staff in front of Plaintiff and told them that Goudlock could have died from the fall. (Id. at 24.) The Plaintiff is six feet and three inches tall, and on the date of the incident, he weighed approximately 300 pounds. (Id. at 6.)

Based on these facts, Goudlock has sufficiently alleged a serious medical need. See Jett, 439 F.3d at 1096 (explaining that an inmate establishes a medical need when the failure to treat the condition could result in unnecessary pain). Plaintiff's failure to describe the extent of his bleeding on the date of the incident does not change the result. (See Second Am. Compl. 6, ECF No. 63.) That same day, the triage registered nurse indicated that Goudlock had sustained a small toe laceration, avulsion injury, "foot trauma," and an "alteration in skin integrity." (Id.) The nurse also noted that Plaintiff was to obtain a medical evaluation, x-ray, and tetanus shot. (Id.) Even the nurse's description of Plaintiff's injuries is consistent with a serious medical need. His cut foot, twisted ankle, shaved skin, and reinjured sciatic nerve are injuries that could significantly affect an individual's daily activities. See Lopez, 203 F.3d at 1131.

**b. Deliberate indifference**

To satisfy the subjective element of a deliberate indifference to medical needs cause of action, Goudlock must allege that Defendants Amiling and Esquilin knew he faced a substantial risk of serious harm and acted with deliberate indifference to that harm. See Farmer, 511 U.S. at 836; Estelle, 429 U.S. at 104; Jett, 439 F.3d at 1096.

15

08cv0204 AJB(RBB)

1    The correctional officers maintain that the contentions in
2   Goudlock's pleading establish that Defendants were merely
3   negligent, if anything, in their response to Plaintiff's requests
4   for medical attention. (Mot. Dismiss Attach. #1 Mem. P. & A. 7,
5   ECF No. 70.) Amiling and Esquilin urge that failing to summon
6   medical care for thirty minutes is insufficient to give rise to a
7   violation. (Id.) Plaintiff's injuries were not visible to the
8   officers and were not serious enough to justify summoning the
9   emergency medical care that Goudlock insists he was entitled to.
10  (See id. at 7-8.) Finally, Plaintiff has not asserted that the
11  purported thirty-minute delay exacerbated his injuries. (Id. at
12  8.) In response, Goudlock challenges the officers' assertion that
13  they caused only a thirty-minute delay. (Opp'n 2, ECF No. 71.)
14  "What did happen, and what is documented is, I sat in my cell
15  bleeding for 4 hours, till the door was opened for the morning meal
16  at 8:00 a.m., I did not receive medical help until [approximately]
17  1:00 p.m." (Id.)

18    In count one, Goudlock pleads that after falling from the top
19  bunk in his cell, he screamed for assistance from Amiling and
20  Esquilin, but both officers refused to respond. (Second Am. Compl.
21  3, ECF No. 63.) After thirty minutes has passed, the pain became
22  unbearable and Goudlock asked his cellmate to yell for medical
23  assistance, which he did by screaming, "Man down." (Id.)
24  Defendants Amiling and Esquilin heard the pleas for help because
25  they were on duty. (Id.) Even so, Defendants chose to ignore
26  Plaintiff's cries, which caused Goudlock to suffer unnecessarily.
27  (Id.)

28

08cv0204 AJB(RBB)

Contrary to Defendants' representation that Goudlock went only thirty minutes without care, the Plaintiff has alleged that Amiling and Esquilin ignored his pleas for medical assistance for at least four hours.  Goudlock asserts that he fell from the top bunk at 4:00 a.m., and he was not examined by a nurse until "0900," or 9:00 a.m., and again at "1340," or 1:40 p.m.  (Second Am. Compl. 3, 6, ECF No. 63; see also Opp'n 2, 4-5, ECF No. 71 (reiterating that Plaintiff bled in his cell from 4:00 a.m. to 8:00 a.m., when his door was initially opened for meal service).)  The documents attached to the Second Amended Complaint support Plaintiff's claim that he suffered for at least four hours as Amiling and Esquilin ignored his calls for help.  See Ferdik, 963 F.2d at 1261 (noting that courts must construe the pleadings of pro se plaintiffs liberally).

The officers do not argue that they did not hear Goudlock's cries for help or that they responded to his pleas.  Instead, they insist that Plaintiff's injuries were not serious and were not visible enough to put Defendants on notice that Goudlock suffered life-threatening harm.  (Mot. Dismiss Attach. #1 Mem. P. & A. 7-8, ECF No. 70.)  This argument misses the point.  The inquiry is not whether Defendants could have adequately diagnosed the severity of Goudlock's injuries had they responded to his pleas, but whether the Defendants responded reasonably to a risk of harm to Plaintiff. Farmer, 511 U.S. at 844.  Amiling and Esquilin purportedly heard but ignored Plaintiff's calls for help.  Id. at 843 n.8 (clarifying that prison officials are liable if they decline to confirm inferences of risk that they suspect existed); Swan v. United States of America, 159 F. Supp. 2d 1174, 1182 (N.D. Cal. 2001)

08cv0204 AJB(RBB)

("[T]urning a blind eye to the relevant surrounding facts will not shield a prison official from liability."); cf. Trueman v. State, No. CV 09-2179-PHX-RCB(DKD), 2010 U.S. Dist. LEXIS 67847, at *4-5, 15-16 (D. Ariz. June 15, 2010) (dismissing plaintiff's claim that prison officials violated his rights when they witnessed plaintiff slip and fall, saw no physical injuries, and failed to summon medical care).  The Plaintiff has alleged injuries that would be visible to a correctional officer responding to the situation. (Second Am. Compl. 3, 6, ECF No. 63 (alleging profuse bleeding, a toe laceration, a foot trauma, shaved skin, avulsion injury, twisted ankle, and alteration in skin integrity.)

Goudlock has presented facts demonstrating that Defendants Amiling and Esquilin deliberately denied or delayed his access to medical care.  See Linderman, 59 F. App'x at 182-83.  The Plaintiff described the injuries he sustained as a result of the fall and alleged that Defendants heard the "frantic" and desperate pleas that there was a "man down," yet ignored them for four hours. (Second Am. Compl. 3, 6, ECF No. 63); see Thomas v. Hernandez, No. C 01-4685 THE (pr), 2003 U.S. Dist. LEXIS 11272, at *17 (N.D. Cal. June 30, 2003) (stating that deliberate indifference requires an actual perception of risk); Cf. Trueman, 2010 U.S. Dist. LEXIS 67847, at *15-16 (finding that plaintiff failed to state a deliberate indifference to serious medical needs claim because he did not allege facts showing that defendants should have known that he even required medical aid).  Further, Goudlock has asserted that he required medical treatment and that the Defendants' failure to respond to his calls resulted in the unnecessary infliction of pain.  (Second Am. Compl. 3, ECF No. 63.)

18

1    For all of these reasons, Defendants Amiling and Esquilin's

2  Motion to Dismiss should be **DENIED**.

3       **2.    Count Two:  Defendant Perez**

4    Sergeant Perez contends that the Plaintiff has failed to state

5  a deliberate indifference to medical needs claim against him.

6  (Mot. Dismiss Attach. #1 Mem. P. & A. 4-6, ECF No. 70.)  Goudlock

7  must assert the existence of a serious medical need and that Perez

8  was deliberately indifferent to that need.  See Jett, 439 F.3d at

9  1096.

10        **a.    Serious medical need**

11   The Defendant argues generally that the injuries Plaintiff

12 sustained from the fall were not serious enough to constitute a

13 serious medical need.  (See Mot. Dismiss Attach. #1 Mem. P. & A.

14 4-5, ECF No. 70.)  Yet, the sergeant does not address the existence

15 of a medical need upon Goudlock's arrival at Donovan, when Perez

16 purportedly allowed Plaintiff to be assigned to a top bunk bed,

17 disregarded his lower-bunk chrono, and ignored Goudlock's concerns.

18 (See generally id.)

19   Plaintiff states that when he arrived at Donovan, he suffered

20 from "severe sleep apnea" and had fallen from his bunk at CRC, the

21 prison where he was housed before Donovan.  (Second Am. Compl. 11,

22 ECF No. 63.)  On June 10, 2007, five days before Goudlock's fall, a

23 correctional officer completed a form requesting medical services

24 for Plaintiff because he exhibited "bizarre" and "odd" behavior in

25 the form of a sleep disorder and would fall asleep suddenly.  (Id.

26 at 5.)  Goudlock contends that he told Perez several times about

27 his sleep apnea and his previous fall from a bed.  (Id. at 11.)

28

1    Viewing these facts in the light most favorable to Plaintiff,
2    he has sufficiently alleged that his "severe sleep apnea"
3    constituted a serious medical need.  <u>See</u> <u>Jett</u>, 439 F.3d at 1096;
4    <u>Lopez</u>, 203 F.3d at 1131 (noting that instances of serious medical
5    needs include the existence of a condition that a reasonable doctor
6    or patient would find important and worthy of comment, or a
7    condition that significantly affects an individual's daily
8    activities).

9              **b.   Deliberate indifference**

10   Sergeant Perez argues that based on the information he was
11   provided, Goudlock's bunk assignment was reasonable.  (Mot. Dismiss
12   Attach. #1 Mem. P. & A. 5-6, ECF No. 70.)  The Defendant could not
13   have been aware of any risk to Plaintiff because Goudlock's bottom-
14   bunk chrono did not indicate that he had sleep apnea or that he was
15   at risk of falling from an upper bunk.  (<u>Id.</u> at 6.)  Perez argues
16   that most lower bunk chronos are issued because the inmate cannot
17   climb to the upper bunk, and Defendant therefore could not have
18   known that Goudlock's medical condition posed a risk of falling.
19   (<u>Id.</u>)  Although Plaintiff contends that he told Sergeant Perez
20   about his sleep apnea, the documents attached to the Second Amended
21   Complaint illustrate that Goudlock was not actually diagnosed with
22   the condition until at least four months after the incident.  (<u>Id.</u>)
23   Further, Defendant insists that in Plaintiff's inmate grievance,
24   Goudlock noted that he was placed in a top bunk because no lower
25   bunks were available.  (<u>Id.</u>)  These allegations, Perez insists, do
26   not indicate that he was deliberately indifferent to any excessive
27   risk of injury.  (<u>Id.</u>)
28

The Plaintiff argues in his Opposition that in light of his prior fall from his bunk at CRC, doctors at CRC and at Donovan had already diagnosed the sleep disorder.  (Opp'n 6, ECF No. 71.) Goudlock cites to the Request for Psychiatric/Psychological Services Form submitted by Correctional Officer Gonzalez five days before Plaintiff's incident, which indicates that Plaintiff had a sleep disorder that caused him to fall asleep suddenly.  (Id.) Goudlock argues that, as a sergeant, Perez had the authority to call medical staff to verify this medical condition, and Defendant was negligent on three different times prior to the incident.  (See id. at 5-6.)  If Perez had reviewed Plaintiff's medical file, the Defendant would have been aware of Goudlock's medical condition. (Id.)  Although the actual diagnosis was not formally confirmed until later, Plaintiff urges that his medical file contained sufficient evidence of a sleep disorder to put Perez on notice that keeping Goudlock in a top bunk bed posed a risk of harm.  (See id. at 6-7.)  Defendant also allegedly lied to Plaintiff about Defendant's true name to conceal his identity.  (Id.)

In count two, Plaintiff contends that he was transferred to Donovan on June 11, 2011, and at that time, his medical file included a ground-floor cell and bottom-bunk medical chrono issued by CRC medical staff.  (Second Am. Compl. 21, ECF No. 63.)  That same day, a Donovan physician, Dr. R. Walsh, evaluated Goudlock's medical accommodations and issued similar orders.  (Id. at 4; see also id. at 21.)  In addition to the actual medical chrono, Correctional Officer Gonzalez completed a staff referral form requesting psychiatric and psychological services for Plaintiff's "bizarre behavior" in the form of a "sleeping disorder."  (Id. at

5.)  "[Goudlock] is sitting one minute, all of a sudden he [is]
sleeping.  He was sitting on his bunk and fe[l]l forward.
[B]ehavior odd.  [S]hould be seen to see if he can be given psych
services."  (<u>Id.</u>)  Although this form was completed on June 10,
2007, five days before Plaintiff's June 15, 2007 accident, the
stamp on the document indicates that CRC Mental Health did not
receive the request until June 18, 2007.  (<u>Id.</u>)  Nevertheless,
Goudlock has sufficiently pleaded that the documents in his medical
file at the time of his transfer contained evidence of a severe
sleep disorder.  (<u>Id.</u> at 5, 11.)  The Plaintiff explicitly
described his medical condition to Defendant and the risk that
sleeping in a top bunk posed.  (<u>See</u> <u>id.</u>)

     The Defendant argues that he is not liable because he did not
know that Goudlock's medical accommodation was due to sleep apnea.
(Mot. Dismiss Attach. #1 Mem. P. & A. 6, ECF No. 70.)  This
argument is unavailing.  Prison physicians are not required to
explain the bases for their orders.  <u>See</u> <u>Chess v. Sisto</u>, No. 2:06-
cv-1639 LKK KJN P, 2010 U.S. Dist. LEXIS 46494, at *25 (E.D. Cal.
May 12, 2010) (discussing that it is reasonable to believe that
prison staff will honor medical accommodation chronos).  In any
event, the question is not whether Perez disobeyed the chrono, but
whether he knew of a serious medical need that he could have
addressed, yet chose to ignore.

     Goudlock has alleged that three different times before the
fall, he told Perez that Plaintiff suffered from sleep apnea, had
fallen from his bunk at CRC, and this was documented in his medical
file.  (<u>See</u> Second Am. Compl. 11, ECF No. 63.)  Sergeant Perez was
purportedly responsible for locating appropriate housing and could

have ensured that Plaintiff received a lower bunk.  (See id.); see Jones v. Martel, No. CIV S-09-1208 DAD P, 2011 U.S. Dist. LEXIS 17201, at *29-30 (E.D. Cal. Feb. 22, 2011) (finding that the defendant was not deliberately indifferent because there was no evidence of an actual accommodation chrono or that the sergeant knew plaintiff should be housed in a lower-tier cell); Williams v. Steck, No. CV 08-3161-DOC (OP), 2009 U.S. Dist. LEXIS 106238, at *14 (C.D. Cal. Sept. 14, 2009) (dismissing plaintiff's claim with leave to amend when plaintiff never specified what medical condition, if any, he had that warranted the bottom bunk chrono); see also Hickman v. Ciccati, No. 01CV2003-BTM(NLS), 2004 U.S. Dist. LEXIS 18315, at *14 n.3 (S.D. Cal. Sept. 2, 2004) (clarifying that prison officials can be liable for assigning a certain bunk to a prisoner in spite of his medical conditions).  Perez's reliance on the statement in Plaintiff's grievance that a different correctional officer told him that there was no bottom bunk open at the time is insufficient to warrant dismissal.  Goudlock has contended that he was subsequently moved to a bottom bunk bed in a ground-floor cell the same day as his accident.  (Second Am. Compl. 15, 18, 24, ECF No. 63.)

Finally, the fact that Goudlock was not formally diagnosed with sleep apnea until four months after the incident is inconsequential.  (See Mot. Dismiss Attach. #1 Mem. P. & A. 6, ECF No. 70.)  There are allegations that Sergeant Perez was aware of a sleep disorder and that keeping Plaintiff in an upper bunk posed a risk of harm.  Goudlock had a bottom-bunk chrono and had communicated his sleep disorder to Defendant on three occasions. See O'Neal v. Voong, No. CIV S-07-2578 MCE GGH P, 2009 U.S. Dist.

LEXIS 14824, at *9-10 (E.D. Cal. Feb. 25, 2009) ("If plaintiff told defendants that he had a lower bunk chrono and they moved him to an upper bunk, the court would find that he had stated a colorable Eighth Amendment claim."); <u>Garrett v. Richhi</u>, No. 1:03-CV-05892-AWI-SMS-P, 2006 U.S. Dist. LEXIS 36431, at *18-19 (E.D. Cal. June 5, 2006) (finding that defendant was not entitled to judgment as a matter of law when defendant ignored plaintiff's complaints about his upper bunk assignment).

Sergeant Perez is alleged to have ignored inferences and risks he was told about.  His Motion to Dismiss should be **DENIED**.

**B.    <u>Absolute Immunity</u>**

Amiling, Esquilin, and Perez insist that they are absolutely immune from liability for damages in their official capacities. (Mot. Dismiss Attach. #1 Mem. P. & A. 2, ECF No. 70.)  The Plaintiff does not address the Defendants' argument.  (<u>See</u> Opp'n 2-7, ECF No. 71.)

The Eleventh Amendment grants the states immunity from private civil suits.  U.S. Const. amend. XI; <u>Savage v. Glendale Union High Sch. Dist. No. 205</u>, 343 F.3d 1036, 1040 (9th Cir. 2003).  It also provides immunity for state officials sued in their official capacities.  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (citing <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985)).  "As such, it is no different from a suit against the State itself."  <u>Id.</u> (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985); <u>Monell</u>, 436 U.S. at 690 n.55).  "The proponent of a claim to absolute immunity bears the burden of

1  establishing the justification for such immunity." <u>Antoine v.</u>
2  <u>Byers & Anderson</u>, 508 U.S. 429, 432 (1993) (footnote omitted).

3       Goudlock sues Defendants Amiling, Esquilin, and Perez in their
4  individual and official capacities, and he seeks monetary damages.
5  (Second Am. Compl. 2, 26, ECF No. 63.)  A claim for damages is
6  properly alleged against the Defendants in their individual
7  capacities.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  But
8  claims against them in their official capacities are claims against
9  the State of California, which is absolutely immune from liability
10 for damages.  <u>See</u> <u>Will</u>, 491 U.S. at 71.  Accordingly, the
11 Defendants' Motion to Dismiss monetary claims against them in their
12 official capacities should be **GRANTED**.  Goudlock may only seek
13 monetary damages from Amiling, Esquilin, and Perez in their
14 individual capacities.

15 **C.   <u>Qualified immunity</u>**

16      Finally, Defendants allege that they are each protected by
17 qualified immunity from liability in their individual capacities.
18 (Mot. Dismiss 2, ECF No. 70.)  Amiling, Esquilin, and Perez argue
19 that because Goudlock has failed to state a deliberate indifference
20 to serious medical needs claim, the qualified immunity inquiry may
21 end there.  (<u>Id.</u> Attach. #1 Mem. P. & A. 9.)  All Defendants
22 contend that their conduct was not clearly unlawful.  (<u>Id.</u>)  In
23 response, Goudlock maintains that qualified immunity only protects
24 members of the state government, such as mayors, governors, and
25 city councilmen, but the doctrine does not shield wardens or
26 correctional officers from liability.  (Opp'n 2, ECF No. 71.)  Even
27 if qualified immunity could protect Amiling, Esquilin, and Perez,
28

Plaintiff argues, these Defendants are not entitled to immunity in light of their negligence.  (Id.)

     "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Hydrick v. Hunter, 449 F.3d 978, 992 (9th Cir. 2006).  This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

     When considering a claim for qualified immunity, courts engage in a two-part inquiry:  Do the facts show that the defendant violated a constitutional right, and was the right clearly established at the time of the defendant's purported misconduct? Delia v. City of Rialto, 621 F.3d 1069, 1074 (9th Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  A right is clearly established if the contours of the right are so clear that a reasonable official would understand his conduct was unlawful in the situation he confronted. Dunn v. Castro, 621 F.3d 1196, 1199-1200 (9th Cir. 2010) (citation omitted) (internal quotation marks omitted).  This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit. Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation omitted).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." Id.

"[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Al-Kidd, ___ U.S. at ___, 131 S. Ct. at 2080; Pearson, 555 U.S. at 236; see also Delia, 621 F.3d at 1075 (citing Brooks v. Seattle, 599 F.3d 1018, 1022 n.7 (9th Cir. 2010); Bull v. City & County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010)). "If the Officers' actions do not amount to a constitutional violation, the violation was not clearly established, or their actions reflected a reasonable mistake about what the law requires, they are entitled to qualified immunity." Brooks, 599 F.3d at 1022 (citing Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007)); see James v. Rowlands, 606 F.3d 646, 651 (9th Cir. 2010) (quoting Pearson, 555 U.S. at 232, 236).

Courts should generally attempt to resolve this threshold immunity question at the earliest possible stage in the litigation "before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" Al-Kidd, ___ U.S. at ___, 131 S. Ct. at 2080 (quoting Pearson, 555 U.S. at 236-37); see also Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that the purpose of resolving immunity issues early is so that officials are not subjected to unnecessary discovery); Hunter v. Bryant, 502 U.S. 224, 227 (1991).

### 1.   Count One:  Defendants Amiling and Esquilin

According to Correctional Officers Amiling and Esquilin, it is not clearly established that Goudlock had a right to emergency care for his cut toe.  (See Mot. Dismiss Attach. #1 Mem. P. & A. 10, ECF No. 70.)  The officers argue that their purported thirty-minute

delay in summoning medical care for Plaintiff was not clearly

unlawful and that Goudlock's injuries did not appear to warrant

emergency response.  (See id.)

### a.   Violation of a constitutional right

A prisoner has a constitutional right to "ready access to

adequate medical care." Hoptowit, 682 F.2d at 1253.  When

institutional officials are deliberately indifferent to an inmate's

medical needs, the prisoner's Eighth Amendment right to be free

from cruel and unusual punishment is violated.  Estelle, 429 U.S.

at 103.

The Court has already found that Goudlock adequately alleged

that Defendants Amiling and Esquilin were deliberately indifferent

to a serious medical need when they ignored his calls for help and

delayed the medical response to Plaintiff's injuries.  Goudlock has

therefore asserted that Defendants violated a constitutional right.

### b.   Whether the right was clearly established

"Whether a right is clearly established turns on the

'objective legal reasonableness of the action, addressed in light

of the legal rules that were clearly established at the time it was

taken.'" Clouthier v. County of Contra Costa, 591 F.3d 1232, 1241

(9th Cir. 2010) (quoting Pearson, 555 U.S. at ___, 129 S. Ct. at

822).  "This is 'a two-part inquiry:  (1) Was the law governing the

state official's conduct clearly established?  (2) Under that law

could a reasonable state official have believed his conduct was

lawful?'" Estate of Ford, 301 F.3d at 1050 (quoting Jeffers, 267

F.3d at 910).

First, the law governing the Defendants' conduct was clearly

established.  "Whether the right is clearly established in a

particular case is judged as of the date of the incident alleged,
and is a pure question of law." Phillips v. Hust, 338 F. Supp. 2d
at 1162 (citing Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th
Cir. 1993)). "[T]he right alleged to have been violated must not
be so broadly defined as to 'convert the rule of qualified immunity
that our cases plainly establish into a rule of virtually
unqualified liability simply by alleging violation of extremely
abstract rights.'" Cunningham v. Gates, 229 F.3d 1271, 1288 (9th
Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 639
(1987)).  "On the other hand, . . . the right can not be so
narrowly construed so as to 'define away all potential claims.'"
Id. (quoting Kelley v. Borg, 60 F.3d 664, 667 (9th Cir. 1995)).

An inmate's right to adequate medical care has long been
established.  Farmer, 511 U.S. at 828-29; Estelle, 429 U.S. at
103-04; Hoptowit, 682 F.2d at 1253.  A prison official's deliberate
indifference to an inmate's serious medical need constitutes the
unnecessary and wanton infliction of pain prohibited by the Eighth
Amendment.  Helling, 509 U.S. at 32; Estelle, 429 U.S. at 104;
McGuckin, 974 F.2d at 1059.  Deliberate indifference may be
manifested by the intentional denial, delay, or interference with
the prisoner's medical care.  Estelle, 429 U.S. at 104-05;
Linderman, 59 F. App'x at 182-83.  The law also imposes liability
on institutional staff members who turn a blind eye to surrounding
facts, fail to confirm inferences of risk they suspect to exist, or
do not respond reasonably to the risk.  Farmer, 511 U.S. at 843
n.8; Swan, 159 F. Supp. 2d at 1182.  Consequently, the law
applicable to Goudlock's deliberate indifference allegations was
clearly established on June 15, 2007, the date Officers Amiling and

Esquilin allegedly ignored Plaintiff's pleas for help and delayed his access to medical care. (See Second Am. Compl. 3, ECF No. 63.)

Second, viewing the facts in the light most favorable to Goudlock, a rational prison official would believe that his or her conduct was unlawful. See Estate of Ford, 301 F.3d at 1045. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, . . . qualified immunity is appropriate." Id. "The Eighth Amendment requires that prison officials provide a system of ready access to adequate medical care. Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff." Hoptowit, 682 F.2d at 1253.

Amiling and Esquilin contend that a thirty-minute delay in summoning treatment for Plaintiff's minor injuries was not clearly unlawful. (See Mot. Dismiss Attach. #1 Mem. P. & A. 10, ECF No. 70.) As discussed, Goudlock has alleged the Defendants ignored his calls for at least four hours, not thirty minutes. Also, Plaintiff's ultimate medical diagnosis is not vital to the qualified immunity inquiry. (See id.) The issue is whether a reasonable official would have known it was unlawful to deliberately ignore a prisoner's calls for help without investigating the matter whatsoever, causing a multiple-hour delay in medical treatment. The Defendants' knowledge of the risk may be inferred from the fact that the risk was obvious. See Farmer, 511 U.S. at 842. Plaintiff alleges that the officers heard "frantic"

pleas that a man was "down."  Goudlock urges that he bled in his

cell for four hours without any response from Amiling and Esquilin.

The officers were put on notice that their failure to respond

to, or at least investigate the reasons for, Plaintiff's cries for

help was unlawful.  See id. at 843 n.8 (failing to confirm

inferences of risk that a defendant suspects to exist constitutes

deliberate indifference); Swan, 159 F. Supp. 2d at 1182 (stating

that turning a blind eye to surrounding facts does not protect an

official from liability).  Defendants Amiling and Esquilin are not

entitled to qualified immunity.

### 2.   Count Two:  Defendant Perez

Sergeant Perez similarly submits that keeping Goudlock housed

in an upper-tier cell and an upper bunk for four days was not

clearly unlawful.  (Mot. Dismiss Attach. #1 Mem. P. & A. 9, ECF No.

70.)  As discussed, Sergeant Perez's Motion to Dismiss count two is

limited to Goudlock's deliberate indifference to a serious medical

need claim.  The Court will not consider whether Defendant Perez is

immune from liability for the conditions of confinement cause of

action asserted against him.

### a.   Violation of a constitutional right

The Eighth Amendment requires prison officials to take

reasonable measures to protect prisoners from serious risks to

their health and safety.  Farmer, 511 U.S. at 837.  The Court has

found that Goudlock adequately stated a claim against Perez for

allowing Plaintiff to remain housed in a top bunk, ignoring his

bottom bunk medical chrono, and disregarding Plaintiff's statements

about his medical condition.

### b.   Whether the right was clearly established

1    First, the Court must consider whether the law governing
2  Sergeant Perez's conduct was clearly established.  See Estate of
3  Ford, 301 F.3d at 1050.  The facts in the Second Amended Complaint
4  are sufficient to allege that, at a minimum, Perez suspected that
5  keeping Goudlock assigned to an upper bunk could pose a risk of
6  harm to Plaintiff.  The law is clear that a correctional sergeant's
7  failure to confirm inferences of risk that prison officials suspect
8  exist is unconstitutional.  See Farmer, 511 U.S. at 843 n.8; Swan,
9  159 F. Supp. 2d at 1182.

10    Second, a reasonable correctional sergeant in Perez's position
11  would know that it is unlawful to ignore an inmate's lower bunk
12  chrono and disregard his express reluctance to sleep in an upper
13  bunk based on a severe sleep disorder and prior instances of
14  falling from prison bunk beds.  See Estate of Ford, 301 F.3d at
15  1050.

16    The Defendant argues that it was not clearly unconstitutional
17  for Perez to assign Goudlock to a top bunk for four days when no
18  bottom bunks were available.  (See Mot. Dismiss Attach. #1 Mem. P.
19  & A. 9-10, ECF No. 70.)  Perez cites to Goudlock's inmate
20  grievance.  (Id. at 6, 9-10.)  There, Plaintiff complains that one
21  of the two correctional officers who placed him in an upper-tier
22  cell and in a top bunk stated that there were no lower bunks
23  available.  (Second Am. Compl. 22, ECF No. 63.)  Goudlock disputes
24  this contention.  He asserts there was appropriate housing
25  available on June 15, 2007, the date of the incident, because he
26  was moved to a bottom bunk in a ground-floor cell that same day.
27  (Id. at 15, 18 (indicating that Donovan staff relocated Goudlock to
28  a bottom bunk on June 15, 2007, which satisfied his medical

restrictions); <u>see</u> <u>id.</u> at 24 (clarifying that he was moved to a
compliant bed after his 4:00 a.m. fall); <u>see also</u> <u>id.</u> at 11
(asserting Perez could have "set the situation right," but did
not).)  At the pleading stage, Defendant Perez can not contend that
he ignored Plaintiff's chrono and statements because Perez knew
there were no available lower bunks.  Because the facts alleged are
that there was a lower bunk available on June 15, 2007, Perez's
attempt to analogize this case to <u>Hickman v. Ciccati</u>, No.
01CV2003-BTM(NLS), 2004 U.S. Dist. LEXIS 18315 (S.D. Cal. Sept. 2,
2004), is inapposite.

     In <u>Hickman</u>, on a failure to prevent harm conditions of
confinement claim, the correctional officer was aware that
plaintiff had been issued a bottom bunk chrono because of his
tendency to experience seizures.  <u>Hickman</u>, at *11.  When the
officer discovered there were no lower bunks available, he
immediately notified his supervisor, a correctional sergeant.  <u>Id.</u>,
at *11-12, 14.  The sergeant then asked the plaintiff whether he
could temporarily spend the night on an upper bunk; twelve days
elapsed without plaintiff ever discussing the matter with the
sergeant again.  <u>Id.</u> at *3-4.  On the twelfth night, the plaintiff
fell from the top bunk due to a seizure.  <u>Id.</u> at *4.  The court
found that the officer reasonably responded by notifying his
supervisor of the situation, as the officer was not authorized to
make bed moves himself.  <u>Id.</u> at *11.  The sergeant also was found
to have responded reasonably because the plaintiff only approached
the sergeant once about sleeping on a lower bunk.  <u>Id.</u> at *12.  The
court concluded that while the upper-bunk placement created a risk,
because no lower bunks were available, and plaintiff did not

continue to request a lower bunk, a reasonable officer could have assumed that plaintiff would be safe in an upper bunk temporarily. See id. at *14.

Here, in contrast, Goudlock asserts that he gave Perez his lower bunk chrono and directly communicated his concerns to Defendant on three different occasions before the fall. (Second Am. Compl. 11, ECF No. 63.)  The Plaintiff even told Perez that Goudlock had fallen from his upper bunk at a prior prison due to his sleep disorder. (Id.)  A rational sergeant in this situation would know that to avoid liability, he could report his concerns to another official or investigate the inmate's statements by asking more questions or reviewing his prisoner's file.

Goudlock has pleaded that Sergeant Perez was aware of Plaintiff's medical condition and failed to address it in any manner.  Under the circumstances, Defendant Perez is not entitled to qualified immunity.

### V.   CONCLUSION AND RECOMMENDATION

Defendants Amiling and Esquilin's Motion to Dismiss Goudlock's claim that the officers violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs should be **DENIED**.  Defendant Perez's Motion to Dismiss the deliberate indifference to a serious medical need allegation against him should also be **DENIED**.

The Motion to Dismiss Plaintiff's monetary claims against the Defendants in their official capacities should be **GRANTED**.  The Defendants' Motion to Dismiss based on qualified immunity should be **DENIED**.  When proceeding with his Second Amended Complaint,

1  Goudlock may only seek monetary damages from Amiling, Esquilin, and

2  Perez in their individual capacities.

3       This Report and Recommendation will be submitted to the United

4  States District Court judge assigned to this case, pursuant to the

5  provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

6  objections with the Court and serve a copy on all parties on or

7  before January 11, 2012.  The document should be captioned

8  "Objections to Report and Recommendation."  Any reply to the

9  objections shall be served and filed on or before January 31, 2012.

10 The parties are advised that failure to file objections within the

11 specified time may waive the right to appeal the district court's

12 order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

13      **IT IS SO ORDERED.**

14

15 Dated: December 20, 2011

   _____
   Ruben B. Brooks
16 United States Magistrate Judge

17 cc:
   Judge Battaglia
18 All Parties of Record

19

20

21

22

23

24

25

26

27

28